## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

CASE NO. _____

**JTH TAX LLC d/b/a LIBERTY TAX SERVICE,**

        Plaintiff,

v.

**PATRICIA M. LAIL, LAIL ACCOUNTING AND TAX SERVICES, INC. a/k/a LAIL ACCOUNTING AND TAX SERVICES, LLC, and LAIL ACCOUNTING SERVICES, INC. d/b/a AFFORDABLE TAX SERVICE,**

        Defendants.

_____/

### VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff JTH Tax LLC d/b/a Liberty Tax Service ("Liberty"), through its undersigned counsel, alleges for its Verified Complaint against Defendants Patricia M. Lail ("Lail"), Lail Accounting and Tax Service, Inc. a/k/a Lail Accounting and Tax Service, LLC ("Lail Accounting & Tax"), and Lail Accounting Services, Inc. d/b/a Affordable Tax Group LLC ("Affordable Tax") (collectively, "Defendants") as follows:

### PARTIES

1.      Liberty is a Delaware limited liability company with its principal place of business in the Commonwealth of Virginia.

2.      Liberty was formerly a corporation known as JTH Tax, Inc., incorporated in Delaware, before it was converted to a limited liability company.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

3.    Liberty and its affiliates maintain franchises and company-owned income tax preparation offices throughout the United States.

4.    Defendant Lail is a citizen of the State of Florida who resides in Charlotte County, Florida, within the Middle District of Florida.

5.    Defendant Lail Accounting & Tax is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Punta Gorda, Florida, within the Middle District of Florida.

6.    Defendant Affordable Tax is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Punta Gorda, Florida, within the Middle District of Florida.

7.    The Principal Office Address and Mailing Address for Lail Accounting & Tax, as listed on the Electronic Articles of Incorporation on file with the Florida Division of Corporations, is 35 Ocean Drive, Punta Gorda, Florida 33950, which is Lail's home address.

8.    The Principal Office Address and Mailing Address for Affordable Tax, as listed on the Electronic Articles of Incorporation on file with the Florida Division of Corporations, is 35 Ocean Drive, Punta Gorda, Florida 33950, which is Lail's home address.

9.    The Mailing Address for Affordable Tax, as listed on the Fictitious Name Filing on file with the Florida Department of State, is 20020 Veterans Boulevard, Suite 10, Port Charlotte, Florida 33954.

10.    Upon information and belief, Defendants have operated and/or are operating a competing tax preparation business, using the name Affordable Tax Services, at 20020 Veterans Boulevard, Suite 10, Port Charlotte, Florida 33954.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

## JURISDICTION AND VENUE

11.     This Court has personal jurisdiction over each of the Defendants in that Lail is a natural person who is a citizen of the State of Florida and Lail Accounting & Tax and Affordable Tax are Florida corporations each with their principal place of business in the State of Florida.

12.     This Court has original subject matter jurisdiction pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(1), and supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims under the Lanham Act and the DTSA.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and/or a substantial part of property that is the subject of the action is situated in this District.

## FACTUAL BACKGROUND

### The Liberty Franchise System

14.     Liberty is a franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States, including the State of Florida.

15.     Liberty owns federally registered Liberty Tax Service® trademarks, service marks, logos, and derivations thereof (the "Marks"), including U.S. Registration Nos. 2314991, 2467670, 2479692, 3167134, and 5509978, as well as the Liberty Tax Service® system, which sells income tax preparation and filing services and products to the public under the Marks.

16.     Liberty grants licenses to franchisees to use the Marks and participate in its confidential and proprietary business system pursuant to written franchise agreements, which are reasonably and carefully tailored to protect Liberty's valuable confidential information, reputation, goodwill, and other legitimate business interests.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

17.    Liberty discloses certain confidential information, including methods of operation of franchises, customer information, and marketing information ("Confidential Information"), to franchisees through its Operations Manuals, training manuals, training programs, and in providing guidance and assistance to its franchisees pursuant to a franchise agreement.

18.    Liberty requires that its franchisees agree that, upon expiration, termination, or nonrenewal of a franchise agreement, they will never use, disclose, or permit the use or disclosure of its Confidential Information in any manner whatsoever.

19.    Liberty requires that, upon termination, expiration, or nonrenewal of a franchise agreement, the former franchisee will stop using all literature and forms received, return all customer information, and return all copies of its Operations Manual and any updates thereto.

20.    As a result of these efforts and expenditures, the Liberty Marks have become associated in the minds of consumers with uniform goods and services of consistently high quality, provided only by persons following Liberty's approved sales, operating methods, and procedures.

21.    Liberty has grown from five offices in 1998 to over 3,500 offices today, and is now one of the largest tax preparation franchises in the United States.

22.    Liberty plays an important role in the local economies in which each of its franchisees operate (including Illinois), with a network of over 12,000 tax preparers.

23.    Liberty's busiest time of year is January through April, when the majority of tax returns are prepared.

**The Franchise Agreements**

24.    On or about February 3, 2014, Lail Accounting & Tax entered into a Franchise Agreement with Liberty for the FL179 (EnglewoodFL-1) Franchise Location (the "FL179 Franchise Agreement"), which provided rights and obligations related to the FL179

(EnglewoodFL-1) Franchise Location (the "FL179 Franchise Location").  A copy of the FL179 Franchise Agreement is attached hereto, and made a part hereof, as Exhibit A.

25.    Lail signed the FL179 Franchise Agreement on behalf of "Lail Accounting and Tax Service, LLC" but did so individually, leaving the title line below her signature blank.

26.    Online records available from the Florida Department of State, www.sunbiz.org, however, do not identify any limited liability company with the name Lail Accounting and Tax Service, LLC.

27.    Online records available from the Florida Department of State, www.sunbiz.org, do identify a Florida for profit corporation with the name Lail Accounting and Tax Service, Inc., Document Number P13000084973, which was incorporated in 2013.

28.    Upon information and belief, Lail Accounting & Tax is in fact a corporation and not a limited liability company.

29.    Lail is the President of Lail Accounting & Tax according to the 2019 Florida Profit Corporation Annual Report filed with the Florida Department of State on April 29, 2019.

30.    In addition to the FL179 Franchise Agreement, on or about April 29, 2014, Lail Accounting & Tax entered into a Franchise Agreement for the FL433 (Punta GordaFL-1) Franchise Location (the "FL433 Franchise Agreement"), on April 29, 2014, which provided rights and obligations related to the FL433 (PuntaGordaFL-1) Franchise Location (the "FL433 Franchise Location").  A copy of the FL433 Franchise Agreement is attached hereto, and made a part hereof, as Exhibit B.

31.    Lail signed the FL433 Franchise Agreement on behalf of "Lail Accounting and Tax Service, LLC" as the "President" of the LLC.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

32.    Upon information and belief, as set forth above, Lail Accounting & Tax is, in fact, a corporation and not a limited liability company.

33.    The terms of the FL179 Franchise Agreement and the FL433 Franchise Agreement are identical or nearly identical.

34.    The FL179 Franchise Agreement and the FL433 Franchise Agreement are collectively referred to as the "Franchise Agreements" and the franchises operated thereunder are collectively referred to as the "Franchised Businesses."

35.    The FL179 Franchise Location and the FL433 Franchise Locations are collectively referred to as the "Franchise Locations."

36.    Pursuant to the Franchise Agreements, Liberty provided Lail Accounting & Tax and Lail with training in franchise operation, marketing, advertising, sales, and business systems.

37.    Lail Accounting & Tax and Lail also received a copy of Liberty's confidential operating, marketing, and advertising materials, which are not available to the public or to anyone who is not part of Liberty's respective business systems.

38.    In exchange for Liberty's grant of franchises allowing Lail Accounting & Tax and Lail to "operate a tax return preparation business using Liberty's system and Liberty's Marks within the Territory" and specifically at the Franchise Locations, Lail Accounting & Tax and Lail agreed to certain obligations while operating under the FL179 Franchise Agreement and after termination of the FL179 Franchise Agreement.

39.    Under Sections 4(d) and 4(f) of the Franchise Agreements, Lail Accounting & Tax and Lail agreed to pay Royalties and an Advertising Fee, which are calculated as a percentage of monthly Gross Receipts.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

40.     Pursuant to Section 4(g) of the Franchise Agreements, Lail Accounting & Tax and Lail agreed to pay Liberty the Royalty and Advertising fees by the 5th of each month.

41.     Pursuant to Section 4(h) of the Franchise Agreements, Lail Accounting & Tax and Lail agreed to pay interest on amounts due under the Franchise Agreement at a rate of 12% compounded daily on any amounts that are fifteen (15) days past due.

42.     Liberty records as accounts receivable ("A/R") the amounts due from a franchisee under the Franchise Agreement, e.g., Royalties and Advertising Fee.

43.     Pursuant to Section 6(b)(i) of the Franchise Agreements, Lail Accounting & Tax and Lail were allowed to use Liberty's Marks to hold out his Liberty Tax Service® business to the public and agreed to "exclusively use Liberty's Marks as Liberty develops them for this purpose only."

44.     Pursuant to Section 6(g) of the Franchise Agreements, Lail Accounting & Tax and Lail were required to use the software that Liberty provides and could not "use, install or allow to be installed any other federal or state personal income tax return preparation or electronic filing software on any computers used in the Franchised Business without Liberty's prior written consent."

45.     Pursuant to Section 9 of the Franchise Agreements, Lail Accounting & Tax and Lail agreed that, upon expiration, termination, transfer, or nonrenewal, it would immediately stop identifying itself as a Liberty Tax franchisee, pay all amounts owing to Liberty, deliver all customer lists, return all files containing customer tax returns, files, and records, deliver the Manual and any updates, cancel all fictitious name listing that use the Liberty Marks, and adhere to all applicable contract provisions, including the post-term covenants not to compete and not to solicit.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

46.     Pursuant to Section 10(a) of the Franchise Agreements, Lail Accounting & Tax and Lail agreed to an in-term covenant not to compete, which provides that, during the term of the Franchise Agreement, Lail Accounting & Tax would not "directly or indirectly, for a fee or charge, in the United States or Canada, prepare or electronically file income tax returns, or offer Financial Products, except in [its] capacity as a Liberty Tax Service franchisee using the Liberty Tax Service system to offer such products and services."

47.     Pursuant to Section 10(b) of the Franchise Agreements, Lail Accounting & Tax and Lail agreed to a post-termination covenant not to compete ("Non-Compete") for "a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business . . . [and] not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Financial Products, within the Territory or within twenty-five (25) miles of the boundaries of the Territory."

48.     Pursuant to Section 10(d) of the Franchise Agreements, Lail Accounting & Tax and Lail agreed that, for a period of two (2) years following termination, expiration, transfer, or other disposition of the Franchised Business or its removal as a signator, it would not "within the Territory or twenty-five (25) miles of the boundaries of the Territory directly or indirectly solicit any person or entity served by any of [its] prior Liberty offices within the last twelve (12) months that were a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products."

49.     Pursuant to Section 10(e) of the Franchise Agreements, Lail Accounting & Tax and Lail agreed that, during the term of the Agreement, it "will not lease, sub-lease, assign or guaranty a lease in the Territory to or for a person or entity who will offer income tax preparation at such an office."

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

50.     Pursuant to Section 10(h) of the Franchise Agreements, Lail Accounting & Tax and Lail agreed "that the provisions of Section 10 are reasonable, valid and not contrary to the public interest."

51.     To that end, Lail Accounting & Tax and Lail agreed to "waive all defenses to the strict enforcement of Section 10" and further agreed that "Liberty is "entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10."

52.     The in-term and post-term covenants not compete contained in Sections 10(a) and 10(b), the covenant not to solicit in Section 10(d), and the covenant not to lease in Section 10(e) of the Franchise Agreements are necessary to protect Liberty's legitimate, protectable interest in its respective franchise businesses, including but not limited to:

a.     Maintaining and protecting Liberty's goodwill and customer loyalty;

b.     Retaining customer relationships;

c.     Liberty's customer list, customer identification, tax returns, and other Confidential Information; and

d.     Preserving Liberty's ability to facilitate the operation of Liberty franchises at the current Franchise Locations.

53.     Lail Accounting & Tax and Lail acknowledged, in Section 12 of the Franchise Agreements, that information provided by Liberty regarding, among other things, its respective Marks, methods, techniques, formats, specifications, procedures, information, systems, and customer and marketing information was confidential, and was to be used only in connection with the operation of the Franchised Business.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

54.    Pursuant to Section 12(a) of the Franchise Agreements, Lail Accounting & Tax and Lail agreed to the following term: "During the term of this Agreement and following the expiration or termination of this Agreement, you covenant not to directly or indirectly communicate, divulge, or use any Confidential Information for [your] personal benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by Liberty in writing prior to disclosure."

55.    Pursuant to Section 12(c) of the Franchise Agreements, Lail Accounting & Tax and Lail agreed that they would (a) not use the Confidential Information for any purpose other than the operation of the Franchised Business pursuant to this Agreement; (b) maintain absolute confidentiality of the Confidential Information during and after the term of this Agreement; (c) not make unauthorized copies of any portion of Confidential Information; and (d) adopt or implement all reasonable procedures, including, but not limited to, restrictions on disclosure to its employees and the use of nondisclosure and non-competition clauses in employment agreements with employees that have access to Confidential Information.

56.    Pursuant to the Franchise Agreements, Liberty was entitled to first refusal of any transaction involving the Franchises and a third-party under Section 15(b), to wit: "If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Franchise or any interest in the Franchise, Liberty shall have the option ('Right of First Refusal') to purchase the Franchise or interest."

57.    Section 17(a) of the Franchise Agreements provides that "Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto."

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

58.     Section 23 of the FL179 Franchise Agreement and Section 26 of the FL433 Franchise Agreement contains a personal guaranty whereby Lail Accounting & Tax and Lail agreed to abide by the terms therein including making all payments specified in the Franchise Agreements.

59.     On January 18, 2019, Liberty and Lail, individually and as Member of Lail Accounting & Tax, entered into a Mutual Termination Agreement (the "Mutual Termination Agreement") as to the FL433 Franchise Agreement.  A copy of the Mutual Termination Agreement is attached hereto, and made a part hereof, as Exhibit C.

60.     Among other things, the Mutual Termination Agreement provided that Lail Accounting & Tax and Lail would "immediately comply with the Post Termination Obligations in the Franchise Agreements," including the covenants not to compete and not to solicit as described in the FL433 Franchise Agreement and return of the Operations Manual and other Confidential Material.

**Unfair Competition and Breach of In-Term and Post-Term Non-Competition Covenants**

61.     The address for the FL179 Franchise Location address is 1720 McCall Road, Englewood, Florida 34223 ("Office 15122").

62.     The address for the FL433 Franchise Location address is 318 Tamiami Trail, Punta Gorda, Florida 33950 ("Office 19368").

63.     Upon information and belief, Defendants diverted business from Liberty, working from Office 15122, Office 19368 and/or from 20020 Veterans Boulevard, Suite 10, Port Charlotte, Florida 33954, providing tax preparation services using non-Liberty software and an Electronic Filing Identification Number ("EFIN") from the Internal Revenue Service ("IRS") that is not affiliated with Liberty.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

64.    All commercial tax return businesses are required to have an EFIN issued by the IRS for each business location they own and operate.

65.    An EFIN allows the IRS to monitor, track, and regulate who is electronically filing tax returns.

66.    Upon information and belief, Defendants have been preparing and submitting tax returns to the IRS via an additional EFIN unaffiliated with Liberty since 2017 or thereafter, using alternative software, in violation of the Franchise Agreements.

67.    Lail Accounting & Tax submitted an EFIN application for Office 15122 on November 17, 2013 and an EFIN application for Office 19368 on October 22, 2014.

68.    Liberty identified an additional EFIN being used by Affordable Tax to transmit returns outside of Liberty systems from the Affordable Tax office location on Veterans Boulevard while at the same time Lail was operating and being subject to the obligations of the Franchise Agreements, diverting customers from the Liberty Franchise who come in through use of Liberty advertising, training and goodwill and sharing customer lists of prior customers.

69.    Affordable Tax was incorporated on September 1, 2017 with Lail listed in the Electronic Articles of Incorporation as DPST (Director, President, Secretary, Treasurer).

70.    On October 12, 2017, the fictitious name "Affordable Tax Service" was filed with the Florida Department of State, Registration No. G17000113137.

71.    According to the 2019 IRS External Customer Data Store (ECDS) Extracts, formerly known as Third Party Data Store (TPDS) Extracts, https://www.irs.gov/privacy-disclosure/external-customer-data-store-ecds-extracts, Affordable Tax is an authorized E-File Provider.

72.    On or about November 6, 2017, Affordable Tax submitted an EFIN application to the IRS, CUST-ID 13530450, which is unaffiliated with Liberty.

73.    The mailing address for the additional EFIN is 35 Ocean Drive, Punta Gorda, Florida 33950, which is Lail's home address and the Registered Office on file with the Florida Division of Corporations for both Affordable Tax and Lail Accounting & Tax.

74.    The business address for the additional EFIN is 20020 Veterans Boulevard, Suite 10, Port Charlotte, Florida 33954, which is located approximately seventeen miles from Office 15122 and approximately twelve miles from Office 19368.

75.    Affordable Tax has a Facebook page, https://www.facebook.com/Afftax, which displayed the Affordable Tax logo and graphics and advertised income tax preparation services at all times material hereto.

76.    Toward the end of tax season in 2019, for example, Affordable Tax posted a video on the Facebook page, displaying the Affordable Tax Service logo, captioned, **"How time flies! You still have time to avoid penalties….,"** which displayed a Form 1099 and advertised last minute income tax preparation services.

77.    As a result of the competing income tax preparation business, Defendants transmitted a number of income tax returns outside the Liberty system.

78.    In 2017, before Lail incorporated Affordable Tax and obtained an additional EFIN, Office 15122 submitted 341 tax returns to the IRS and Office 19368 transmitted 117 tax returns to the IRS.

79.    In 2018, Office 15122 submitted 352 tax returns to the IRS, using Liberty software, and Office 19368 transmitted 133 tax returns to the IRS, using Liberty software.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

80.     In 2018, Affordable Tax transmitted 333 tax returns to the IRS, which were filed outside of Liberty systems.

81.     Upon information and belief, Lail closed Office 19368 at some time in January 2019 at or around the time of the Mutual Termination Agreement was executed.

82.     In 2019, Office 15122 submitted 375 tax returns to the IRS, using Liberty software, and Office 19368 transmitted no tax returns after entering into the Mutual Termination Agreement.

83.     In 2019, Affordable Tax transmitted 298 tax returns with the IRS, which were filed outside of Liberty systems.

84.     Operation of the competing tax preparation business in or after 2017 is in direct violation of Section 10(a) of the Franchise Agreements, which provide that Lail Accounting & Tax was not to compete directly or indirectly for a fee or charge in the United States of Canada, prepare or electronically file income tax returns, or offer financial products except in their capacity as a Liberty franchisee during the term of the Franchise Agreements.

85.     Operation of the competing tax preparation business in or after 2019 and thereafter is in direct violation of Section 10(b) of the FL433 Franchise Agreement, which provides that for the two years following termination, Lail Accounting & Tax was not to compete directly or indirectly for a fee or charge, prepare or electronically file income tax returns, or offer Financial Products within twenty-five miles of the FL433 Franchise Territory.

86.     Operation of the competing tax preparation business in or after 2019 and thereafter is in direct violation of the Mutual Termination Agreement, in which Lail Accounting & Tax and Lail agreed to comply with the post-termination obligations in the FL433 Franchise Agreement, including the covenants not to compete and not to solicit.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

87.     Defendants' diversion of business away from the Franchised Businesses to their competing business is in direct violation of Section 12 of the Franchise Agreements as Liberty's Marks, methods, techniques, specifications, procedures, information, systems, and customer/marketing information was confidential and only to be used in connection with the operation of Liberty franchises.

88.     Lail Accounting & Tax also is in violation of Sections 12(a) and 12(c) of the Franchise Agreements when Defendants diverted business away from the Franchised Businesses to another entity thereby interfering with Liberty's business relationships and advantages of Liberty through use of its Marks, and from using, for his benefit, confidential information from Liberty's proprietary manuals and business system.

89.     As a result of this diversion of customers and violation of the in-term non-compete, Lail Accounting & Tax underreported revenue to Liberty.

90.     Lail Accounting & Tax also owes Liberty $79,021.97 in fees and royalties, for which demand has been made but which has not been paid.

91.     Liberty terminated the FL179 Franchise Agreement on August 13, 2019 for failure to use the software Liberty provided and underreporting of revenue.  A copy of the Termination of Franchise Agreement is attached hereto, and made part hereof, as Exhibit D.

92.     Lail Accounting & Tax and Lail are not compliance with their post-termination obligations under the Franchise Agreements and the Mutual Termination Agreement, including, but not limited to:

    a.     Paying all monies owing;

    b.     Transferring all telephone numbers used in relation to the Franchised Business;

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

c.     Delivering all paper and electronic copies of customer lists, tax returns, files, and records;

d.     Returning the Operations Manuals and updates loaned by Liberty; and

e.     Adhering to the post-termination covenants not to compete and not to solicit.

**COUNT I**
**Breach of the Franchise Agreements**
**Liberty vs. Lail Accounting & Tax and Lail**

93.     Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

94.     The Franchise Agreements are valid and enforceable.

95.     Liberty has performed every obligation and condition required of it under the Franchise Agreement.

96.     Pursuant to Section 6(b)(i) of the Franchise Agreements, Lail Accounting & Tax and Lail agreed to only use Liberty's Marks to gain business for Liberty and not to divert business to another company.

97.     Upon information and belief, Defendants used Liberty's Marks to solicit customers and lure them into the Franchise Locations under the guise that Liberty is preparing and filing their tax returns when Defendants were preparing and filing tax returns through the Affordable Tax EFIN that is unaffiliated with Liberty.

98.     Pursuant to Section 6(g) of the Franchise Agreements, Lail Accounting & Tax and Lail agreed that all Franchised Business computers would only use Liberty's software for preparing and electronically filing tax returns.

99.     Defendants, however, transmitted 531 tax returns using non-Liberty software in 2018 and 2019.

100.    Pursuant to Sections 10(a) and 10(b) of the Franchise Agreements, Lail Tax & Accounting and Lail agreed to the in-term non-competition and post-term non-competition covenants.

101.    Upon information and belief, Lail Accounting & Tax and Lail competed with Liberty by preparing and electronically filing income tax returns unaffiliated with Liberty at the Franchise Locations in addition to doing so at the Affordable Tax location in Port Charlotte.

102.    Lail Accounting & Tax and Lail agreed not to disclose or use Liberty's Confidential Information except as authorized in Section 12 of the Franchise Agreements.

103.    Upon information and belief, Lail Accounting & Tax and Lail committed the following acts and omissions, in violation of Section 12 of the Franchise Agreement:

a.    Disclosing Liberty's Confidential Information, including methods of operations, customer information, and marketing information, to other persons and entities, including employees of Affordable Tax not working at the Liberty Franchise Locations, without the consent or authorization of Liberty; and

b.    Using Liberty's Confidential Information for purposes other than the operation of the Franchised Businesses, including for the purpose of operating Affordable Tax to compete with the Franchised Businesses and Liberty.

104.    The aforementioned acts are material breaches of the Franchise Agreements.

105.    As a direct and proximate result of these breaches, Liberty has incurred, and will continue to incur, substantial losses, fees, and expenses for which Lail Accounting & Tax is liable, including, but not limited to:

a.    Loss of customer goodwill and loyalty;

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

     b.      Loss of business opportunities and relationships to provide tax preparation services and related services;

     c.      Loss of customers;

     d.      Loss of profits;

     e.      Loss of franchisee stability;

     f.      Loss of ability to sell other franchises;

     g.      Loss of value in confidential business information;

     h.      Loss of competitive advantage in the FL179 Territory;

     i.      Attorneys' fees; and

     j.      Cost of this action.

**<u>COUNT II</u>**
**<u>Breach of the FL179 Franchise Agreement</u>**
**<u>Liberty vs. Lail Accounting & Tax and Lail</u>**

106.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

107.    The FL179 Franchise Agreement is valid and enforceable.

108.    Liberty has performed every obligation and condition required of it under the FL179 Franchise Agreement.

109.    Lail Accounting & Tax and Lail owe Liberty at least $79,021.97 in fees and royalties, which have not been paid.

110.    Lail Accounting & Tax and Lail likewise used non-Liberty software to file income tax returns, in breach of the FL179 Franchise Agreement, resulting in underpayment of royalties and fees in an amount to be determined at trial.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

111.    As a direct and proximate result of Lail Accounting & Tax's breach of the FL179 Franchise Agreement, Liberty has incurred, and will continue to incur substantial losses, fees, and expenses for which Lail Accounting & Tax is liable.

**COUNT III**
**Breach of the Mutual Termination Agreement**
**Liberty vs. Lail Accounting & Tax and Lail**

112.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

113.    The Mutual Termination Agreement is valid and enforceable.

114.    Liberty has performed every obligation and condition required of it under the Mutual Termination Agreement.

115.    Pursuant to Paragraph 6 of the Mutual Termination Agreement, Lail Accounting & Tax and Lail agreed to immediately comply with the post-term obligations contained in the FL433 Franchise Agreement.

116.    Section 10(b) of the FL433 Franchise Agreement includes post-term non-competition and non-solicitation covenants, effective for a two-year period and within twenty-five miles of the boundaries of the FL433 Franchise Territory.

117.    Lail Accounting & Tax and Lail, however, competed with Liberty in 2019, after the effective date of the Mutual Termination Agreement, by preparing and electronically filing income tax returns through their Affordable Tax Services tax preparation business, within twenty-five miles of the boundaries of the Franchise Territory, using an EFIN unaffiliated with Liberty and also, upon information and belief using Liberty's Confidential Information and customer lists to benefit Defendants' competing business.

118.    These actions are material breaches of the Mutual Termination Agreement.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

119.    As a direct and proximate result of Lail and Lail Tax & Accounting's breaches of the Mutual Termination Agreement, including their failure to immediately comply with Section 10(b) and other provisions of the FL433 Franchise Agreement, Liberty has suffered and will continue to suffer damages in an amount to be proven at trial, for which Lail Accounting & Tax and Lail are liable, including, but not limited to, compensatory damages, consequential damages, and disgorgement of profits.

## COUNT IV
## Federal Trademark Infringement
## Liberty vs. Defendants

120.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

121.    Defendants used Liberty's Marks to identify the services provided from the FL179 Franchise Location and FL433 Franchise Location as those of a Liberty franchisee.

122.    At the same time, however, Defendants actually were providing services through Affordable Tax for their own benefit both at the Affordable Tax location in Port Charlotte and/or, upon information and belief, at the Franchise Locations.

123.    Liberty did not consent to Defendants' use of Liberty's Marks for the sale, offer of sale, or advertising of Affordable Tax Services' goods or services.

124.    Defendants' use of the Marks is likely to cause confusion, cause mistake, and deceive the public.

125.    Defendants therefore were infringing Liberty's Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

126.    Through their unlawful use and display of the Marks, Defendants have profited and Liberty has been damaged.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

127.    Defendants' acts were done knowingly and intentionally to cause confusion, cause mistake and/or to deceive.

128.    As a result, Liberty has suffered and continues to suffer irreparable injury and has incurred and continues to incur monetary damage in an amount to be determined at trial.

### COUNT V
### False Designation and Misrepresentation of Origin
### Liberty vs. Defendants

129.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

130.    Defendants used Liberty's Marks to identify the services provided from the FL179 Franchise Location and the FL 433 Franchise Location as those of a Liberty franchisee but, upon information and belief, were actually providing services through and for Affordable Tax.

131.    Defendants' use of Liberty's Marks caused confusion, cause mistake and/or deception as to Affordable Tax's affiliation, connection, or association with Liberty, or as to the origin, sponsorship, or approval of Affordable Tax's goods, services, or commercial activities.

132.    The unlawful conduct of Defendants described herein constitutes false designation of origin and misrepresentation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

133.    As a direct and proximate result of Defendants' wrongful conduct, Liberty has suffered damages to the value of the Marks and to customer goodwill.

134.    Defendants' acts were done knowingly and intentionally to cause confusion, to cause mistake and/or to deceive.

135.    As a result, Liberty has suffered and continues to suffer irreparable injury and has incurred and continues to incur monetary damage in an amount to be determined at trial.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

## COUNT VI
## Federal Trademark Dilution
## Liberty vs. Defendants

136.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

137.    The Marks are famous trademarks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

138.    Defendants' actions and conduct, as set forth above, constitute dilution of the famous Marks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

139.    Pursuant to 15 US.C. § 1117, Liberty is entitled to recover damages from Defendants caused by their unlawful use of the Marks, in an amount to be determined at trial.

140.    Liberty is entitled to injunctive relief under 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

141.    As a direct and proximate result of Defendants' wrongful conduct, Liberty has suffered and will continue to suffer irreparable damage to reputation and goodwill for which it has no adequate remedy at law.

## COUNT VII
## Defend Trade Secrets Act
## Liberty vs. Defendants

142.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

143.    The DTSA, 18 U.S.C. § 1836, *et seq.*, provides a private civil action for the misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce.

144.    Liberty owns numerous trade secrets, including but not limited to, its Operations Manual, training manuals, training programs, marketing strategies, marketing programs, and customer lists, related to products and services used in interstate commerce.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

145.    Each of Liberty's trade secrets derives independent economic value from not being generally known to and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

146.    Liberty's trade secrets are not readily ascertainable by the public as they are disclosed only to franchisees in the operation of a franchised business pursuant to a franchise agreement.

147.    During the operation of the Franchised Businesses, Liberty's trade secrets were disclosed to Lail Accounting & Tax and Lail for the sole purpose of operating the Franchised Businesses pursuant to the Franchise Agreements.

148.    Liberty has taken extensive measures to preserve and protect these trade secrets for the purpose of maintaining its competitive advantage in the marketplace.

149.    The Franchise Agreements explicitly provide for the protection of such trade secrets, including requiring the delivery of all originals and copies of such information to Liberty upon expiration, termination, or nonrenewal of the Franchise Agreements, requiring former franchisees and their representatives to maintain the confidentiality of the information, and requiring former franchisees and their representatives to never use the information for any purpose other than operating a Franchised Business pursuant to the Franchise Agreements.

150.    Liberty required and Lail Accounting & Tax and Lail agreed that upon expiration, termination, or nonrenewal of the Franchise Agreements, they would never use, disclose, or permit the use or disclosure of Liberty's trade secrets in any manner whatsoever.

151.    Affordable Tax was incorporated by Lail and, under the circumstances, had both actual knowledge of the terms of the Franchise Agreements and access to Confidential Information.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

152.    Lail Accounting & Tax was incorporated by Lail, who entered into and signed the Mutual Termination Agreement in both individual and representative capacities.

153.    Under the circumstances, she had both actual knowledge of the terms of the Franchise Agreements and access to Confidential Information.

154.    Without authority or consent from Liberty, Defendants used the business know-how, customer lists, and customer contact information that they obtained while operating the former Franchised Businesses to obtain business for themselves, thereby misappropriating Liberty's trade secrets.

155.    Upon information and belief, Defendants used and are utilizing Liberty's confidential system and materials after the expiration of the Franchise Agreements and Liberty has not and would not consent to or authorize such use.

156.    Defendants intentionally and without Liberty's permission or authorization misappropriated and/or disclosed Liberty's trade secrets for their own economic benefit and with the intention and knowledge that their conduct would injure Liberty by, for example, causing Liberty to lose any customers successfully solicited by Defendants.

157.    As a direct and proximate result of Defendants' willful, improper, and unlawful disclosure and Defendants' willful, improper, and unlawful use of Liberty's trade secrets, Liberty has suffered and will continue to suffer irreparable injury.

158.    Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendants' actual and threatened use and misappropriation of Liberty's trade secrets should be enjoined from further disclosure or use of Liberty's trade secrets.

159.    Defendants' conduct in misappropriating Liberty's trade secrets was and continues to be willful and malicious, warranting an award of exemplary damages in accordance with 18

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

U.S.C. § 1836(b)(3)(C) and an award of reasonable attorney's fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

**COUNT VIII**
**Unjust Enrichment/Restitution**
**Liberty vs. Defendants**

160.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

161.    Defendants have knowingly and intentionally misappropriated Confidential Information in furtherance of their operation of Affordable Tax separate from the Franchised-Businesses.

162.    Defendants have used and continue to use the former Franchise Location as a tax preparation business and continues to display the Marks in order to confuse, mislead and/or deceive others that Affordable Tax's tax preparation business services are being done by a Liberty franchise, and therefore are being used in violation of the Lanham Act.

163.    In equity and fairness, Defendants are liable to Liberty for any amounts collected from the improper and illegal use of Liberty's Marks and Confidential Information.

164.    Defendants are aware of the Franchise Agreements' existence and its contents such that Defendants know that Liberty expects to be compensated and that Defendants should compensate Liberty for use of Liberty's Marks, Confidential Information, and goodwill as set forth in Liberty's Franchise Agreements.

165.    Defendants knowingly retain these benefits, to which they are not rightfully entitled, at the expense and to the damage of Liberty.

166.    As a direct and proximate result of Defendants' actions, Liberty has suffered and continues to suffer irreparable injury and is entitled to monetary damages in an amount to be determined at trial.

25

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

## COUNT IX
## Unfair Competition
## Liberty vs. Defendants

167.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

168.    Defendants illegally used and displayed Liberty's Marks in violation of the Lanham Act.

169.    Defendants improperly use, and will continue to use, Liberty's Confidential Information in furtherance of the operation of Affordable Tax, which competed directly with Liberty at all times material hereto.

170.    Defendants unfairly profited from using Liberty's Marks and goodwill to confuse, mislead and/or deceive Liberty customers into obtaining services from Affordable Tax who believed they were being serviced by a Liberty franchise even though tax returns were not being transmitted through Liberty's software.

171.    Through their actions, Defendants intentionally attempted to deceive Liberty's current and prospective customers for Defendants' business gain.

172.    As a direct and proximate result of Defendants' actions, Liberty has suffered and continues to suffer irreparable injury and is entitled to monetary damages in an amount to be determined at trial.

## COUNT XI
## Request for Preliminary Injunction
## Liberty vs. Defendants

173.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

174.    Liberty' application for injunctive relief is authorized by Fed. R. Civ. P. 65.

175.    Pursuant to Section 10(h) of the Franchise Agreements, Lail Accounting & Tax and Lail acknowledged and agreed that "Liberty is entitled to a temporary restraining order, temporary

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

and/or permanent injunction" for breach of any of the non-monetary obligations of Sections 9 and 10 of the Franchise Agreements.

176.    By providing competing tax preparation services and, upon information and belief, using the Marks in a manner that confuses, misleads and/or deceives to solicit business for Affordable Tax and disclosing, using, and refusing to return Liberty's Confidential Information, Defendants are in clear violation of the express terms of the Franchise Agreements and in violation of the Lanham Act and/or the DTSA.

177.    As a result of Defendants' unauthorized and unlawful acts, Liberty has been irreparably harmed and will continue to suffer irreparable harm.

178.    For the foregoing reasons, Liberty respectfully requests that the Court grant the following injunctive relief:

a.      Enjoin Lail and Lail Tax & Accounting from breaching non-competition and non-solicitation covenants under the Franchise Agreements and the Mutual Termination Agreement;

b.      Enjoin Defendants from using any of Liberty's Confidential Information and compelling Lail Accounting & Tax and Lail to return Liberty's Confidential Information;

c.      Enjoin Defendants from diverting or attempting to divert any customer or business from Liberty or to solicit or endeavor to obtain the business of any person who shall have been a customer of the Franchise Locations for a period of two years; and

d.      Enjoin Defendants from operating a tax preparation service within twenty-five miles of the boundaries of the FL179 Franchise Territory and FL443 Franchise Territory for a period of two years.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

179.    Liberty has a high likelihood of success on the merits on their claims, and it is probable that they will recover from Defendants, as Defendants are openly and actively violating the Lanham Act and/or the DTSA, Defendants are openly and actively, materially breaching the express terms of the valid and enforceable Franchise Agreements, and are in possession of and using Liberty's Confidential Information.

180.    Irreparable harm will result if a preliminary injunction is not issued because Defendants will continue to violate the Lanham Act and/or the DTSA, Defendants will continue to materially breach the express terms of the valid enforceable Franchise Agreements, which will cause irreparable and irreversible harm to the goodwill and reputation that Liberty has spent significant time and money establishing.

181.    Liberty has no adequate remedy at law because Lail Accounting & Tax refuses to cease its material breaches of express terms in the Franchise Agreements.

182.    Lail Accounting & Tax and Lail waived any requirement that Liberty post bond in Section 10(h) of the Franchise Agreements.

183.    The injury to Liberty outweighs any injury that would be sustained by Defendants collectively, and each of them, as a result of the requested injunctive relief.

184.    Injunctive relief will not adversely affect the public interest.

185.    Defendants have been or are being served with notice of this application for injunctive relief.

### COUNT XIII
### Request for Permanent Injunction
### Liberty vs. Defendants

186.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

187.    After a trial on the merits or a final judgment, Liberty asks the Court to convert any preliminary injunction as specified above into a permanent injunction.

188.    Liberty has joined all indispensable parties pursuant to Fed. R. Civ. 19.

## PRAYER FOR RELIEF

WHEREFORE, Liberty requests of the Court the following relief:

a.    Issuance of a preliminary injunction and a permanent injunction;

b.    An accounting of Defendants' revenues and profits for all tax return preparation and electronic filing performed since 2017;

c.    A monetary award against Defendants in an amount to be proven at trial, including, but not limited to, compensatory damages, expectancy damages, punitive damages, and disgorgement of profits;

d.    A monetary award against Defendants for Liberty's attorney's fees and costs, in an amount to be proven at trial;

e.    Pre- and post-judgment interest; and

f.    Such other relief as the Court shall deem just and proper.

Respectfully submitted this 13th day of March, 2020.

By:  */s/ Capri Trigo*
Capri Trigo
Florida Bar No. 28564
**GORDON REES SCULLY MANSUKHANI, LLP**
100 SE 2nd Street, Suite 3900
Miami, Florida 33131
Telephone: (305) 428.5323
Facsimile: (877) 634.7245
Email: ctrigo@grsm.com
*Counsel for Plaintiff JTH Tax LLC d/b/a*
*Liberty Tax Service*

29

**GORDON REES SCULLY MANSUKHANI**
100 SE 2nd Street, Suite 3900, Miami, Florida 33131

## <u>VERIFICATION</u>

ANTHONY CALI does hereby verify and state pursuant to 28 U.S.C. § 1746:

I am a Regional Director for JTH Tax LLC d/b/a Liberty Tax Service ("Liberty").  I have read the foregoing Verified Complaint and know the contents thereof and state the allegations are true.  I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, I believe them to be true.  The grounds of my knowledge, information, and belief are derived from my position as Regional Director at Liberty, my personal involvement in the event underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Liberty's records and conversations with Liberty's employees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 9th day of March, 2020.

DocuSigned by:

C200D628F84C4A5...

Anthony Cali